In the Matter of the Application of DAVID MACADAMS, Respondent, for a Peremptory Order of Mandamus against S. HOWARD COHEN and Others, as and Constituting the Board of Elections of the City of New York, Appellants.*

JOSEPH V. McKEE, Acting Mayor of the City of New York, Respondent; ALGERNON LEE, as Chairman of the City Committee for the City of New York, and as Chairman of the County Committee of the County of New York and Others, of the Socialist Party, Intervenors, Appellants; DAVID H. KNOTT, as Chairman of the County Committee of the Democratic Party of the County of New York, Intervenor, Appellant.

In the Matter of the Application of DAVID H. KNOTT, Appellant, for a Peremptory Order of Mandamus against S. HOWARD COHEN and Others, as and Constituting the Board of Elections of the City of New York, Respondents, and JOSEPH V. McKEE, Acting Mayor of the City of New York, Respondent.*

First Department, September 29, 1932.

* Affd., 260 N. Y. 559.

*J. Joseph Lilly* of counsel [*William E. C. Mayer* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the appellants S. Howard Cohen and others, constituting the Board of Elections of the City of New York.

*Morris Hillquit* of counsel [*I. Henry Kutz* with him on the brief; *Louis Waldman*, attorney], for the intervenors, appellants, Algernon Lee and others.

*John Godfrey Saxe* of counsel [*John T. Dooling, William B. Crowell, Paul T. Kammerer, David A. Ticktin* and *Emanuel Van Dernoot* with him on the brief; *Knox & Dooling*, attorneys], for the petitioner-appellant and the intervenor-appellant David H. Knott.

*Nathan L. Miller* and *Harold R. Medina* of counsel [*William Gilbert* and *John W. Jordan* with them on the brief; *Medina & Sherpick*, attorneys], for the respondent David MacAdams.

McAvoy, J. A vacancy having occurred in the office of the mayor of the city of New York by the resignation of the mayor on September 1, 1932, the president of the board of aldermen, under section 23 of the Greater New York Charter (Laws of 1901, chap. 466), which makes the provision for vacancies in the office of mayor, commenced to act as mayor. Section 23 of said charter reads as follows: " Whenever there shall be a vacancy in the office of mayor, or whenever, by reason of sickness or absence from the city, the mayor shall be prevented from attending to the duties of his office, the president of the board of aldermen shall act as mayor, and possess all the rights and powers of mayor during such disability or absence. In case of a vacancy he shall so act until noon of the first day of January succeeding the election at which the mayor's successor shall be chosen."

Section 51 of the Second Class Cities Law, which is almost identically worded, has been construed by the Court of Appeals in *Matter of O'Connell* v. *Corscadden* (243 N. Y. 86), and it was there held that such an enactment did not alter the general legislative policy with respect to the time for holding elections in case of a vacancy in an elective office, and that accordingly an election must be held to fill the vacancy at the next election day at which, under the general law, a successor can be chosen.

With reference to the claim of the appellant in that case, that the words " until noon of the first day of January next succeeding

the election at which the mayor's successor shall be chosen," did not refer to the next succeeding election day after the vacancy occurred, but referred to the election day at which the mayor can be elected under the law, as then existing, which would be the last election day of the term and would enable the acting mayor to serve the full unexpired term of the former mayor, it was forcefully pointed out that such an intent could not be ascribed to the Legislature in enacting that section.

If such intention existed, the court said, it would be an " unnecessary and clumsy way of expressing such an intention."

Wherever provisions of law refer to a successor, or an appointee who is to fill an unexpired term, the Legislature has specifically prescribed that method of succession. As the Court of Appeals says in the *Corscadden Case (supra)*, " It leaves no doubt about it." It, therefore, seems to us that when the Greater New York Charter in section 23 provided that in case of a vacancy (in the office of mayor), he (president of the board of aldermen) shall so act until noon on the first day of January succeeding the election at which the mayor shall be chosen, the meaning intended to be conveyed was the same meaning that the Court of Appeals found in the Second Class Cities Law in the *Corscadden* case; that is, that the mayor's successor should be chosen at the next election day at which under the Election Law a successor *can* be chosen.

The policy of the State appears to be, from a long line of enactments, beginning with the first edition of the Revised Statutes of New York, that a vacancy in an elective office must be promptly filled by an election, and that an appointment or other succession is to be held only until an election may be held.

Since chapter 909 of the Laws of 1896, section 4, was enacted, the time for filling vacancies in elective offices was limited to such vacancies as occurred before October fifteenth of any year. The section reads as follows: " Filling vacancies in elective offices. A vacancy occurring before October fifteenth of any year in any office authorized to be filled at a general election, shall be filled at the general election held next thereafter, unless otherwise provided by the Constitution, or unless previously filled at a special election."

This section (as amd. by Laws of 1907, chap. 119) later became section 292 of the Election Law of 1909 (as amd. by Laws of 1911, chap. 891), and subsequently is found in a later revision in the Public Officers Law as section 42, being added by chapter 649 of the Laws of 1922. It is not found in the present Election Law.

The vacancy in the office of mayor having occurred before October fifteenth, and since it has not been filled at a special election,

and there is no constitutional provision against filling it at the general election to be held after the vacancy occurred, it would seem to follow that it must be filled at the general election of 1932.

The respondent argues that the omission in the charter of a provision for election of mayor for the unexpired term and the retention in section 97 of the charter (as amd. by Laws of 1905, chap. 633) of provision for election of a comptroller to fill a vacancy indicates the intent of the Legislature to effect a policy under the present charter to hold mayoralty elections only in odd years, that is every fourth year after 1905, never in an even year, not even to fill a vacancy in the intervening odd years. But it may be as well argued that the omission in section 23 of the provision for filling a vacancy in the office of mayor by election was because of an intent to allow the basic general statute to govern the situation, since such statute is broad enough to cover any office authorized to be filled at a general election and would comprehend the mayor's office, unless the Constitution provided otherwise, or unless there had been a previous special election held. This provision has been considered so broad by the courts as to be held to govern all cases in the case of vacancies not expressly or completely dealt with in the Constitution.

We think that section 94 of the charter (as amd. by Laws of 1923, chap. 667, and N. Y. Local Laws of 1929, No. 19) deals solely with the duration of the mayor's term, and does not deal with the filling of any vacancy in such term.

Whether the election of the mayor of the city of New York must be held in the next general election or not, depending upon whether such office of mayor is a constitutional office, need not be decided, because even though the Constitution failed to require the election to be held at the next succeeding annual election after the happening of the vacancy, we conclude that the general policy of the State, as enacted in its statute making provision for the holding of elections in the case of vacancies in elective offices, makes an election imperative.

No such statute, referring specifically to the filling of a vacancy in office, makes any contrary provision, so that the general statute must apply.

It follows that the order so far as appealed from should be reversed as matter of law, the petition of the petitioner David MacAdams dismissed, and the petition of the petitioner David H. Knott granted.

FINCH, P. J., and TOWNLEY, J., concur; MARTIN, J., dissents.

O'MALLEY, J. (concurring). The question presented is certainly not free from doubt. The statutes applicable, particularly when

viewed with respect to their historical development, would seem to justify the conclusion reached by the respondents in this court. But as was said in *National Surety Co.* v. *Ruffin* (242 N. Y. 413, 417), when considering other statutes, the " pursuit of legislative intent * * * is rather difficult and illusory." Public policy, generally speaking, requires that a vacancy in an elective office be filled as soon as possible by the electorate. In view of this and of the decision in *Matter of O'Connell* v. *Corscadden* (243 N. Y. 86), where language similar to that contained in section 23 of the Greater New York Charter (Laws of 1901, chap. 466) was construed to require such an election, I concur with the majority of the court.

MARTIN, J. (dissenting). The sole issue before this court is whether the vacancy caused by the resignation of Mayor James J. Walker on September 1, 1932, shall be filled at the general election to be held on November 8, 1932, or whether Joseph V. McKee, president of the board of aldermen, shall continue to act as mayor until the expiration of the term for which Mayor Walker was elected.

The appellants and the intervenors contend that an election for mayor *must* be held at the next general election on November 8, 1932.

The petitioner, David MacAdams, contends that no such election may properly and lawfully be held; that the respondent Joseph V. McKee, upon the resignation of Mayor Walker, *succeeded* to all the rights and duties of the office of mayor until a successor is chosen as provided for by the Greater New York Charter (Laws of 1901, chap. 466, as amd.), and that, under its express terms, a successor is not to be chosen until the general municipal election of 1933.

The provisions of the Greater New York Charter cover the entire matter and for a determination of the question before us we must look to sections 23 and 94 thereof. Section 94 (as amd. by Laws of 1905, chap. 633; Laws of 1923, chap. 667, and N. Y. Local Laws of 1929, No. 19) provides: " The mayor shall be the chief executive officer of the city; he shall be elected at the general election in the year nineteen hundred and five, and every four years thereafter, and shall hold his office for the term of four years commencing on the first day of January after his election."

Hon. James J. Walker was elected mayor on November 5, 1929, for the four-year term from January 1, 1930, to December 31, 1933, pursuant to that provision, which is the only provision in the charter for the election of mayor for either a full or unexpired

term. There is no provision for a special mayoralty election, because such a provision is unnecessary.

Section 23 of the charter, relating to the office of mayor, provides: "Whenever there shall be a vacancy in the office of mayor, or whenever, by reason of sickness or absence from the city, the mayor shall be prevented from attending to the duties of his office, the president of the board of aldermen shall act as mayor, and possess all the rights and powers of mayor during such disability or absence. In case of a vacancy he shall so act until noon of the first day of January succeeding the election at which the mayor's successor shall be chosen."

This section, it will be noted, provides that in the case of a vacancy in the office of mayor, the president of the board of aldermen shall act until noon of the first day of January next succeeding the election at which the mayor's successor shall be chosen.

The president of the board of aldermen was elected for a term of four years at the same municipal election as the mayor. One of his prerogatives by virtue of that election is to act as mayor of the city of New York in the event of the resignation of the mayor. He thus obtains his right to act as mayor by succession, not by appointment or by selection through some agency other than the electorate. He is not appointed to the office of mayor, but he assumes the powers by virtue of his election by the people to the office of president of the board of aldermen. His election carries with it his right to succession.

The charter, for many years, contained a provision that in the case of the absence of the mayor, the president of the board of aldermen should act as mayor. This is not a new proposition, nor is it unusual for a president of the board of aldermen to fill out an unexpired term.

At the outset it must be borne in mind that the dominant thought in the minds of the framers of the New York State Constitution, which has been emphasized by subsequent legislative enactments, was that there *should not* be an election for the office of mayor in the same year as a National and State election.

The policy of the State not to permit a municipal election in the city of New York in an even-numbered year is not only emphasized by the provisions of our State Constitution, but is expressed in the various sections of the Greater New York Charter adopted from time to time by the Legislature, which body has the sole power to provide for such municipal elections. The obvious reason for this policy is that elections involving highly important municipal offices should not be influenced by National and State

issues. The importance of presenting for consideration by the electorate, at separate elections, issues which differ substantially, is so well understood.and the reasons therefor have been so often expressed, that it is unnecessary here to dwell upon that subject. It is sufficient to note that a special mayoralty election may not take place unless there is a statute providing therefor.

As to the mayor of the city of New York, the present section 94 of the Greater New York Charter specifically provides that he shall be elected in the year 1905, and *every four years thereafter*, and that his term of office shall be for four years.

The charter of 1897 (Laws of 1897, chap. 378), section 94, provided, as it does at present and in substantially the same language, for the election of a mayor at the general election in certain years, for a term of four calendar years beginning at noon on the first day of the January following the election of mayor. It was also provided in the charter of 1897, by section 23, as does the present charter in substantially the same language, that in case of a vacancy in the office of mayor, the president of the council (board of aldermen) should perform the duties of the mayor until noon of the first Monday of January succeeding the election at which the mayor's successor shall be chosen. There was, however, immediately following the above provisions in the original charter section the following which is not found in the present charter relating to the mayor: " * * * and at the next general election, at which municipal officers shall be elected, which shall take place more than thirty days after the occurrence of a vacancy in the office of mayor, a successor shall be chosen, who shall hold for the unexpired term."

It will, therefore, be noted that section 23 in the original charter did provide for a special election to fill a vacancy in the mayor's office; and in that case the prescribed term of the president of the council (board of aldermen) as acting mayor consequently did expire at the end of the year when such special election was held. However, the original provision for a special election to fill a vacancy in the office of mayor has been completely omitted from the present charter. This occurred in the general charter revision in 1901, and clearly shows that it was the intention of the lawmakers to have the president of the board of aldermen fill out the unexpired term of the mayor and not to require a special election.

It is clear that the purpose of the framers of the Greater New York Charter was to avoid a municipal election in an even-numbered year, *even to fill a vacancy*, for the original charter provision dealing with this subject expressly provided that if there was such a vacancy it should be filled at the next municipal election, and not the next general election.

Although the Greater New York Charter has been amended from time to time, it was evidently the opinion of those dealing with the subject that the charter fully covered the term of mayor and the emergency that would arise in the event of a vacancy, for the provision for a special mayoralty election was stricken out of section 23 and the provision with reference to the comptroller was retained in section 97 (as amd. by Laws of 1905, chap. 633).

The intention of the framers of the Greater New York Charter to prevent an election of municipal officers in an even-numbered year is clearly shown by the section which was retained pertaining to the comptroller, which provided that he should be elected, not at the next *general* election, but at the next *municipal* election. The section relating to the mayor was eliminated for the reason that the framers of the Greater New York Charter were evidently of the opinion that the entire subject was amply provided for by sections 23 and 94 thereof. If that were not the fact, instead of being eliminated, the provision with reference to a special election for mayor would have been retained. A few words could have been stricken out of the section which would then provide for a special election for mayor and permit it to be held in an even-numbered year. If there had been any intention to provide for the election of municipal officers in an even-numbered year, an exception would not have been made in favor of the office of comptroller as too important to be voted for at other than a municipal election in an odd-numbered year, while permitting an election for the more important office of mayor in an even-numbered year.

It seems to me, therefore, from the express wording of the statute that it was the intention of the revisers of the Greater New York Charter that the president of the board of aldermen should act as mayor until January first, after the successor of the mayor was chosen at a regular municipal election, and that the Legislature intended that the president of the board of aldermen should hold the office of mayor beyond the first of January succeeding the vacancy because of the fact that an election for mayor should not be held in an even-numbered year.

The appellants proceed upon the theory that it is imperative that there be a *special election* this year to fill the office of mayor; but in order to sustain their contention they are compelled to rely upon a rather strained construction of general statutes. They, however, overlook the important fact that the intention of the lawmakers was to prevent the holding of a special election in even-numbered years, even to fill vacancies occurring in a municipal office, not only that of the mayor but also that of the comptroller.

The Greater New York Charter being a special act applying

to the city of New York, the question here involved is fully governed thereby, and it must be given precedence over any general act which is applicable only in case there is an absence of a charter provision governing the subject.

Section 1618 of the Greater New York Charter provides: " This act or any section or provision thereof shall not be deemed to be repealed or amended by any act of the Legislature, unless it be so expressly stated, or the legislative intention to that effect is unmistakable."

As I view the matter, therefore, the charter, which specifies in detail the tenure of office of all municipal officers which are elective, and provides when the election shall be held, the terms thereof, by what constituencies to be elected, and how vacancies are to be filled (by appointment or election), specifying the time, etc., covers the question before us. This is true as to the comptroller, president of the board of aldermen, borough presidents and aldermen.

It is contended by the appellants, however, that ample provision has not been made in the sole case of a vacancy in the office of mayor, although the charter provisions show that not one of the municipal offices has been overlooked in the matter of the election and the emergency which arises in case of a vacancy.

The statement of the appellants that the policy of the State is in favor of immediate election in case of resignation, is not borne out with reference to municipal offices in New York city. In the case of a vacancy in the office of borough president, alderman, comptroller and president of the board of aldermen a contrary policy is emphasized by the fact that there is a provision which prevents an election in an even-numbered year, and in most instances permits the filling of the office for the unexpired term without an election.

The appellants are unable to point to any specific statute governing the subject involved and, therefore, rely upon the general laws, which it must be admitted apply only in a case where the subject is not amply covered by special statute. (*People ex rel. Young* v. *Gulvin*, 164 App. Div. 768.)

For the proper construction of the statutes under consideration, the legislative history of sections 23, 94 and 97 should be given consideration. Sections 23 and 94 provide a complete plan for the election of mayor and the succession in case of a vacancy. Section 97 provides for the filling of a vacancy in the office of comptroller. There is no other or further provision in the charter for the filling of a vacancy in the office of mayor, and there is no provision for a special mayoralty election for that office.

It seems to me that the case of *Matter of O'Connell* v. *Corscadden* (243 N. Y. 86) has no application to the case at bar. The contentions raised in that case differ materially from those raised in the present case. In that case the Court of Appeals did not hold that the Public Officers Law, section 42, governed, which is the contention of the appellants in this case. The court there merely held that section 51 of the Second Class Cities Law, as construed, was in harmony with section 5 of article 10 of the State Constitution, and with sections 38, 42 and 43 of the Public Officers Law. It is fair to assume that unless the wording of section 51 of the Second Class Cities Law, which is similar to the language of section 23 of the Greater New York Charter, were construed to mean " for the balance of the term," a mayor not only could be, but was required to be elected to fill the vacancy for the unexpired term in any year, odd or even.

In this case, section 23 of the charter clearly means that the president of the board of aldermen shall act as mayor until a successor is chosen, *as provided in the charter*. There being no authority whatsoever in the charter for a special election of a mayor, and section 42 of the Public Officers Law (as added by Laws of 1922, chap. 649) having no application here in determining a proper interpretation to be given to the relevant provisions of the charter, an examination of the legislative history of the charter itself leads to the inevitable conclusion that the president of the board of aldermen, by succession, must act as mayor in the case of a vacancy for the unexpired term.

No constitutional question is here involved, the case being solely one of statutory construction.

As to the application of the Public Officers Law to the case before us, the Greater New York Charter, containing as it does a full, complete and detailed scheme for the election of all municipal offices, as well as for the filling of vacancies occurring in such offices, I am of the opinion that the contentions of the appellants are without merit and cannot prevail.

The order appealed from should be affirmed in all respects.

Order so far as appealed from reversed, the petition of the petitioner David MacAdams dismissed, and the petition of the petitioner David H. Knott granted.