In the Matter of KATHERINE ROGERS, Petitioner.*
In the Matter of JOHN P. O'BRIEN, Respondent.

Supreme Court, New York County, October 19, 1932.

* Affd., 236 App. Div. 825.

*I. Cyrus Gordon* and *Nathan Frankel*, for the petitioner.

*Arthur J. W. Hilly, Corporation Counsel*, for respondent members of the board of elections, city of New York.

*Knox & Dooling* [*John T. Dooling* of counsel], for respondent John P. O'Brien.

COHN, J. This is an application under section 330 of the Election Law for a summary order declaring invalid the nomination of John P. O'Brien as Democratic candidate for mayor of the city of New York, to fill the vacancy in that office created by the resignation of its incumbent on September 1, 1932. The removal of the certificate of nomination from the files of the board of elections is sought, as well as an order enjoining the board from placing the name of John P. O'Brien on the official ballot or the official voting machines to be used at the general election to be held on November 8, 1932, to fill the vacancy. It is claimed that the nomination is invalid because the certificate of such nomination was not filed with the board of elections until October 7, 1932, in alleged violation of subdivision 5 of section 140 of the Election Law, which requires " a certificate of party nomination for an office to be filled at the time of a general election," to be filed " not later than the fifth Tuesday preceding such election." The fifth Tuesday preceding the election fell on October 4, 1932. It is to be noted, however, that the last paragraph of section 140 of the Election Law provides that: " If a vacancy described in subdivision seven of section one hundred and thirty-one *occur too late* to comply with the provisions of this section, the certificates of nomination, declination and to fill a vacancy in such nomination shall be filed as soon as practicable." (Italics the court's.)

The vacancy described in subdivision 7 of section 131 is one " occurring after the fifth Tuesday preceding the fall primary, in an elective office required to be filled at the next general election, if it be an office for which party nominations might otherwise be made at a fall primary or by a convention of delegates chosen at such a

primary." (Election Law, § 131, subd. 7.) The vacancy in the office of mayor of the city of New York falls within the language of this subdivision. It did not occur until after the resignation of its incumbent on September 1, 1932, which was subsequent to August 16, 1932, the fifth Tuesday preceding the fall primary. It is a vacancy in an elective office required to be filled at the next general election. (*Matter of MacAdams* v. *Cohen*, 236 App. Div. 361; affd., 260 N. Y. 559.)

It follows that the provisions of the last paragraph of section 140 of the Election Law are applicable here if the vacancy occurred too late to permit the certificate of nomination to be filed on or before October 4, 1932, and if the certificate was filed as soon as practicable. Did the vacancy occur too late to permit the certificate to be filed by October 4, 1932, and if so, was the certificate filed as soon as practicable?

On September 23, 1932, in a mandamus proceeding instituted in this court on September 12, 1932, by one David MacAdams, an order was entered commanding the board of elections " to cease and refrain from taking any action * * * for the election of a Mayor of the City of New York " at the general election to be held on November 8, 1932, and directing the board, in matter and paraphernalia to be prepared for use at the election, to omit any reference to the office of mayor of the city of New York as an office to be voted for at said election, and the names of any and all purported candidates for said office. The order at the same time denied the application of David H. Knott, as chairman of the county committee of the Democratic party for the county of New York, for an order directing the board to include the office of mayor among those to be voted for at the general election to be held on November 8, 1932. An appeal promptly taken on September 26, 1932, from this order resulted in a reversal thereof by the Appellate Division of this department by order entered September 30, 1932, the petition of MacAdams being dismissed and that of Knott being granted. The board of elections was directed to proceed with the necessary steps for holding an election for the office of mayor. Thereupon, on that very day, the chairmen of the county committees of the Democratic party of the counties of New York, Kings, Queens Bronx and Richmond issued a call for a meeting of the members of the county committees of the party in said counties, consisting of some 32,075 persons, to be held at Madison Square Garden, New York city, on October 6, 1932, at seven o'clock P. M., for the purpose of nominating a candidate for the office of mayor. This was the only manner in which a party nomination of a candidate to fill a vacancy occurring after the fifth Tuesday preceding the fall primary

could lawfully be made. (Election Law, § 131, subd. 7.) From the order of the Appellate Division an appeal was promptly taken to the Court of Appeals, and the order of the Appellate Division was affirmed, the decision of the Court of Appeals being announced on October 6, 1932, at two P. M. At the meeting held at Madison Square Garden on the evening of that same day, a majority of the committeemen from the five counties being present, John P. O'Brien, by unanimous vote, was nominated for the office of mayor by the Democratic party. The next day, October 7, 1932, at three-forty-one P. M., the certificate of his nomination was received, accepted and filed by the board of elections. From September 23, 1932, the date of the order which granted the application made by MacAdams, until September 30, 1932, the date of entry of the order of reversal by the Appellate Division, the law, as announced by the Supreme Court, was that there existed no vacancy in the office of mayor to be filled at the general election to be held this year. The order of September 23, 1932, went so far as to affirmatively command the board of elections to refrain from taking any steps to hold a mayoralty election on November 8, 1932, and directed the board to omit from all printed matter and paraphernalia to be used at the election any reference to the office of mayor, or the names of any candidates for that office. The court which made the order denied an application to permit compliance with its directions to be suspended during the pendency of the appeal taken therefrom.

Under these circumstances, in legal effect, during the period from September 23, 1932, to September 30, 1932, there was no vacancy in the office of mayor *required to be filled at the next general election.* Certainly it is not reasonably to be expected that nominations for the office of mayor would have been made at a time when, according to the pronouncement of this court, then the last judicial word on the subject, there was no vacancy in the office of mayor to be filled at the general election held this year. The attempt to file a certificate of nomination during this period would have been futile in view of the provisions of the order restraining the board of elections from taking any steps to hold a mayoralty election. Under the order of September 23, 1932, the board of elections would have been obliged to reject any certificates of nomination tendered to it for filing. Furthermore, any attempt to make nominations and file certificates, though not technically a contempt of court, would have been contrary to the spirit if not the letter of the order of the court. Until the decision of the Court of Appeals the question of whether the vacancy in the office of mayor was one to be filled at the general election, to be held this fall rather than one to be filled at

the election to be held in 1933, was a moot one upon which there was a sharp difference of opinion, as indicated by the opinion of the court at Special Term and by the dissent of one of the justices of the Appellate Division. It is true that nominations for the office of mayor could have been made from September 1, 1932, the date of the resignation of James J. Walker, to September 23, 1932. It was not, however, to be foreseen during this interval that a court order would be made which would in effect suspend all proceedings designed to bring about the election of a mayor on November 8, 1932. Prior to the making of this order political parties were justified in assuming that they would have until October 4, 1932, to make and file certificates of nomination. They were not obligated to effect these steps prior to September 23, 1932, for they were entitled for that purpose to the full period of time from September 1 to October 4, 1932. Without prior notice they were deprived on September 23, 1932, of what later was established as their right to make and file nominations for that office, with the result that the period from September first to the date of the decision referred to was of no practical value to them. It was not until the reversal of the order of September twenty-third by the order of the Appellate Division, entered on September thirtieth, that the time for making and filing nominations once more commenced to run.

In determining whether the vacancy occurred too late to comply with subdivision 5 of section 140, the vacancy must in the circumstances be regarded as having occurred at the time the order of the Appellate Division was entered on September 30, 1932. The period of four days between that date and October fourth was obviously too short to permit of the calling and holding of a meeting of the 32,075 members of the county committees, and in addition the filing with the board of elections of the certificate of the nomination made at such meeting. All the 32,075 members were entitled to receive written notice of the joint meeting within a reasonable time in advance of the meeting in accordance with the party rules. Provision had to be made for hiring a hall large enough to allow an orderly assemblage of the vast army to be accommodated. Madison Square Garden was the only place in the city of New York suitable for the convocation of such a gathering. It is stated, and not denied, that the first evening for which the garden was available after September 30, 1932, was October 6, 1932. An evening rather than any other time had to be chosen for such a meeting in order to give all members of the county committees a fair and reasonable opportunity to attend.

Under all these circumstances how can it be said that the vacancy occurring during the day of September 30, 1932, did not occur too

late to permit of the filing of a certificate of party nomination on or before October 4, 1932?   Moreover, the wording of the last paragraph of section 140 of the Election Law is such that it is applicable even though the vacancy to be filled at the next general election occurred prior to the fifth Tuesday preceding the election (October 4, 1932).   Subdivision 5 of section 140 provides that a certificate of party nomination for an office to be filled at the time of a general election must be filed not later than the fifth Tuesday preceding such election, and that the certificate of nomination for an office to be filled at an election held at a time other than that of a general election shall be filed not later than twenty-one days preceding such election.   Had it been the intention of the Legislature to make the last paragraph of section 140 applicable only to a vacancy occurring after the final date for the filing of party nominations specified in subdivision 5 of that section, it would have been a simple matter to so provide, by language substantially as follows: " If a vacancy described in subdivision seven of section one hundred and thirty-one occur after the final dates fixed in this section for the filing of certificates of party nomination * * * the certificates of nomination * * * shall be filed as soon as practicable."   It is significant, therefore, that the last paragraph of section 140 actually provides that nominations may be filed as soon as practicable after the final dates for filing the same fixed in that section, if the vacancy occur at a time " too late to comply with the provisions of this section " (not necessarily after the final dates fixed in subdivision 5).   The wording used indicates that our law makers had in mind the possibility that a vacancy might occur on or before the final dates fixed for the filing of certificates of party nomination, and yet occur too late to permit the making of the nomination and the filing of the certificate of nomination on or before such final date.   If a vacancy in an office to be filled at the next general election had occurred on October 3, 1932, a day prior to the last day for filing certificates of party nomination, or if that vacancy had occurred some time on the last day for filing such certificates, viz., October fourth, *obviously* the ponderous machinery necessary under subdivision 7 of section 131 of the Election Law for the making of a nomination, namely, a convocation of the county committees of all five counties, could not function to produce a nomination in so limited a period.   Under a fair and reasonable construction of the last paragraph of section 140 of the Election Law, a vacancy may occur on or before October 4, 1932, and yet be too late to permit compliance with subdivision 5 of section 140 because of the time necessary to make a nomination through the county committees and to file the certificate of nomination.   I, therefore, hold that

within the meaning of the last paragraph of section 140 of the Election Law the vacancy in the office of the mayor of the city of New York, for the purposes of this motion, occurred on September 30, 1932, too late for a certificate of party nomination to be filed on or before October 4, 1932; that the filing of the certificate on October 7, 1932, was " as soon as practicable;" that the period from September 23, 1932, to September 30, 1932, must be disregarded because of the court order in existence during that period, declaring that there was no vacancy to be filled at the general election to be held this fall; and in addition, that the period from September 1, 1932, to September 23, 1932, is not properly to be charged against those filing the certificate of nomination because during that time they had the right to assume that they would have, in addition thereto, the full period from September 23, 1932, to October 4, 1932, and not merely the short interval from September thirtieth to October fourth.

Furthermore, the respondent O'Brien asks for affirmative relief under the authority of section 330 of the Election Law as a " candidate aggrieved." That section provides that: " § 330. Summary jurisdiction. The supreme court is vested with jurisdiction to summarily determine any question of law or fact arising as to any of the subjects set forth in this section, which shall be construed liberally. Such proceedings may be instituted as a matter of right and the supreme court shall make such order as justice may require. * * * 2. The nomination of any candidate, or his election to any party position, in a proceeding instituted by any candidate aggrieved."

Nominated on October 6, 1932, the respondent O'Brien could not have filed his certificate of nomination on October fourth. He caused the certificate to be filed upon the very day following the night of his nomination, namely, on October seventh. He now invokes the discretion of this court and asks that an order be made (1) relieving him of the statutory requirement that the certificate of nomination be filed not later than October fourth, and (2) providing that the filing of the certificate on October seventh be regarded as a full compliance with the statute under all the circumstances. It is true that the statutory requirement as to the time when certificates of nomination should be filed is mandatory. (*Matter of Darling*, 189 N. Y. 570.) In that very case, however, the Court of Appeals in a *per curiam* opinion said (at p. 571): " Though we regard the statutory requirement as to the time when certificates of nomination should be filed as mandatory, a majority of the court are of the opinion that there may occur accidents and mistakes, causing delay in such filing, from the effects of which the Supreme

Court in either branch may, under section 56 of the Election Law, relieve, provided it finds that the delay has not been due to the negligence or fault of the convention making the nomination, or of the party to whom the filing of the certificate was intrusted. (See *Matter of Clark*, 168 N. Y. 427.) But the question in each case, whether there has been excusable default or misfortune, depends upon the particular facts, and the determination of the question rests in the Supreme Court." Section 56 of the Election Law (Laws of 1896, chap. 909, as amd. by Laws of 1901, chap. 654), which was in existence at the time of the decision in *Matter of Darling (supra)*, has been superseded by the present section 330 of the Election Law, which contains additional language providing for a " liberal " construction. Ordinarily the discretion will not be exercised unless the nomination was made and the certificate prepared and under course of being filed within the period prescribed by the Election Law. (See opinion of Mr. Justice McAvoy, writing for the Appellate Division in this department, in *Matter of Neary* v. *Voorhis*, 207 App. Div. 419, at p. 422.) This is due to the fact that only under the most exceptional circumstances would there be any excuse for the failure of a political party to make a nomination within the time fixed in the Election Law.

In the instant case, however, such an exceptional situation appears to be presented. For reasons similar to those referred to in arriving at the conclusion that the vacancy occurred too late to permit compliance with subdivision 5 of section 140 of the Election Law, it is my opinion that the failure of the Democratic party to make the nomination for the office of mayor on or before October 4, 1932, was due to no negligence or fault on its part or on the part of the chairmen and members of the county committees authorized to make such nomination. On the contrary, the failure to make the nomination on or before October 4, 1932, was the direct result of the order of this court, dated September 23, 1932, which in effect suspended all proceedings directed toward the filling of the vacancy in the office of mayor at the general election to be held on November 8, 1932, until it was reversed by the order of the Appellate Division entered on September 30, 1932. In view of the very short amount of time which then remained, the making of a nomination on or before October 4, 1932, was a practical impossibility. In these circumstances the case is one where " the delay has not been due to the negligence or fault of the convention [in this case the county committees] making the nomination," and that, therefore, it is one in which the discretionary power of the court may be exercised within the doctrine of the *Darling Case (supra)*. It follows that even if it were to be assumed that the vacancy did not technically

occur too late to permit compliance with subdivision 5 of section 140 within the meaning of the last paragraph of that section, a proper case was nevertheless presented for the exercise of the discretionary power vested in the court by section 330 of the Election Law to grant relief.

For the reasons indicated, the application of the petitioner is denied, and the cross-application of the respondent John P. O'Brien is granted. Settle order.