Hon. Edward V. Regan State Comptroller
You have requested my opinion as to the present status of certain interim appointees of the Governor, who were appointed on January 1 and 2, 1979 while the Senate was not in session to positions to which permanent appointment, made only during the session, would not be complete without the advice and consent of the Senate. Specifically, is an interim appointee entitled to remain on the State payroll more than 20 days after the commencement of the current session of the Senate if nominated by the Governor to permanent appointment and the Senate either (a) has not yet acted on the nomination or (b) has rejected it. There is the further question whether the action of the Senate on January 3rd, described below, was an effective rejection.
As you know, I have previously taken the position in Abrams v. Regan, etal. (Supreme Court, New York County, Index No. 40113/1979) that under Public Officers Law § 39 such interim appointees hold office for a statutory term which expires no less than 20 days after the commencement of the next meeting of the Senate, i.e., on January 23, 1979;* and in settlement of that litigation you agreed to accept my legal position and to restore the names of such appointees to the State payroll through January 23rd.
A brief recital of the relevant facts is in order.
On January 1 and 2, 1979, the Senate was not in session and the Governor made 68 interim appointments.
On January 3, 1979 the Senate assembled and the Governor submitted the nominations of his interim appointees for permanent appointment. After considerable debate on the constitutionality of the interim appointments, based on the belief of the majority of the Senate that there had been no recess, hence "recess" appointments could not be made (unrev. transcript at 50-52, 58, 68, 100),** a motion was made and carried
 ". . . . to return the so-called recess appointments to the Governor as disapproved but without prejudice." (103)
The chair had ruled the motion out of order
 "because first it raises a judicial and not a legislative question, and secondly, the chair can find no power in the law or the Constitution or the rules for the procedure you suggest"
but the chair's ruling was overruled by voice vote (68-69).
The author of the motion explained that the motion would be "without prejudice to whatever future action might be taken so far as any of these appointments are concerned. . . ." (58). He said that many of the names would not be rejected (56, 65) and that the disapproval was not on "the merits", which would be considered only if all or most of the names came back before the Senate "in the ordinary course of events, after they've been scrutinized by the appropriate committees" (64).
In acting as it did, the Senate recognized that it was not attempting to follow its own procedures with regard to nominations (66), which read as follows (Rule VII § 6):
 "Nominations. Unless the Senate orders otherwise, all nominations sent by the Governor for the appointment of any officer shall be submitted to the Temporary President who shall then refer such nominations simultaneously to the Finance Committee, and the appropriate standing committee, for consideration and recommendation and such standing committees, other than the Committee on Judiciary shall thereafter refer such nominations to the Finance Committee of the Senate who shall take whatever further actions it deems necessary and thereafter make its report on the nominations to the full Senate. . . ."
Nor did it follow its own procedures for waiving the Rules. The Senate rule governing suspension of the Rules is as follows (Rule XI):
 ". . . . a motion to alter, suspend or rescind any such rule . . . shall not be in order, without the unanimous consent of the Senate, unless one calendar legislative day's previous notice thereof in writing shall be given. . . ."
This was not observed as there was neither unanimous consent nor one day's prior notice of suspension of the Rules.
On January 10, 1979 the Governor resubmitted the names of the same persons for appointment to permanent positions. I am advised that as of this writing, the Senate has confirmed seven nominations and has not yet acted on the remainder.*
Will Interim Appointees Be Entitled To Remain In Office After January 23
It is my opinion that interim appointees on whose nominations the Senate has not acted* will be validly holding office at the end of their statutory term expiring 20 days after commencement of the Senate session (i.e., after January 23, 1979) and that they will be entitled to remain on the State payroll.
Sections 5 and 39 of the Public Officers Law, which must be read together (Seidenburg v. County Court, 34 N.Y.2d 499, 506), compel this result. Section 39 provides that the Governor may fill vacancies when the Senate is not in session "for a term which shall expire . . . at the end of 20 days. . . .". Section 5 captioned: "Holding over after expiration of term", provides that every officer shall "hold over . . . after the expiration of the term for which he shall have been chosen, until his successor shall be chosen and qualified." CompareRoher v. Dinkins, 32 N.Y.2d 180, where officers appointed to fill elective office who were holding over after the term had expired were found to be validly in office because of section 5, above, notwithstanding the definite limitation implied by the text of the Constitutional provision that "in case of elective officers, no person appointed to fill a vacancy shall hold his office . . . longer than . . . .," a date which had passed.
It has been the practice for interim appointees on whose nominations the Senate has not acted to continue in office as holdovers. This practice has been sanctioned in several Attorney General's opinions: 1913 Opns. Atty. Gen. 474, 1943 Opns. Atty. Gen. 443, 1955 Opns. Atty. Gen. 117 and 257. In reenacting section 39 of the Public Officers Law (e.g. L. 1928 ch. 102 and L. 1947 ch. 122) without adopting an amendment addressed to the holdover problem, the Legislature is presumed to have accepted the prevailing interpretation of the section in this regard.Bethlehem Steel v. Board of Education, 61 A.D.2d 147, 163, affd. on opn. of App. Div., 44 N.Y.2d 831.
In seeking to ascertain legislative intent, it is appropriate to consider the question in its practical aspects. A narrow interpretation of the Public Officers Law that would not permit a valid holdover of an interim appointee after the 20-day period, leaving State agencies without a head of department is not conducive to the orderly and effective administration of State government. The very purpose of such provisions as section 5 (holdover) and section 39 (interim appointments) is to provide a mechanism for the continuous and orderly functioning of the executive agencies of government. This purpose is defeated by an interpretation that abruptly creates a vacancy at the end of the 20-day period because the Senate has not acted. The same individuals would be finding themselves in office one day, out the next, and in again when their nominations are confirmed — an unlikely intended result.
Some of the appointees are designated to serve on the boards of public corporations. If non-action by the Senate within the 20-day period creates a vacancy, this could have the undesirable effect of jeopardizing the ability of such corporations to function, since they may be lacking a quorum.
Finally, the Senate has had the opportunity to act on the nominations at least since they were resubmitted on January 10. The executive branch, not the power of the Senate, suffers if the appointments lapse due to the Senate's failure to act. By not acting, the Senate may fairly be deemed to have consented to the incumbents' holding over as State officers, discharging the duties of their respective offices, and remaining on the public payroll.
Such practical considerations reinforce my legal conclusion that interim appointees whose nominations have not yet been acted upon by the Senate may validly serve and remain on the State payroll after January 23.
What, If Anything, Was The Legal Effect Of The Senate's Action On January3
I have considered, and rejected, the possiblity that the Senate's action on January 3 may have altered the status of the interim appointees or their entitlement to remain in office as holdovers after the 20-day period.
A careful reading of the Senate proceedings on January 3 indicates that the Senate was not purporting to exercise its constitutional role of advise-and-consent on nominees for permanent appointment; as discussed above, it was merely taking a position with regard to the validity of the interim appointments. Interim appointments are exclusively the concern of the Governor, however, and the Senate's action had no legal effect.
But even if, arguendo, the Senate were purporting on January 3 to exercise its advise-and-consent powers with regard to nominations for permanent appointment, this action was without legal effect since the Senate followed neither its own rules on nominations nor its own rules on suspending the rules. The fact that it did not purport to be acting in this capacity, as the record shows, is, however, dispositive.
What Will Be The Effect Of A Valid Senate Rejection On The HoldoverStatus Of These Appointees
The Senate's disapproval after due consideration of the nomination of any one of the Governor's interim appointees will raise a serious and novel question. It is my opinion that while the Senate's action would not disturb the statutory term of office of such an interim appointee, which ends on January 23rd, it would necessarily have the effect of terminating any holdover status prospectively, effective on the date of the Senate's disapproval.
Lacking precise legal precedent, my view is predicated on an analysis of the history and purpose of the constitutional apportionment of the appointing power between the Governor and the Senate and a reading within the constitutional framework, and consistent with its intent, of the statutory provision relating to holdovers.
The 1915 Constitutional Convention after considerable debate proposed that the Governor alone have the appointing power (Art. VI § 4). However, this proposed Constitution was rejected by a vote of the people. As the article was revised by the Legislature and approved by the people in 1925, appointment of the heads of departments requires the consent of the Senate. The provision continues unchanged to this day, reading that such officers
 ". . . . shall be appointed by the governor by and with the advice and consent of the senate. . . ."
(Art. V § 4). The appointment is not "complete" until it has been confirmed by the Senate, Public Officers Law § 7.
While the appointing power is an executive power which presumptively favors its exercise by the Governor, and while the initiative for making appointments lies exclusively with the Governor, who alone nominates candidates for high public office, the Senate, nevertheless, participates significantly in the decision whether the appointment shall be made. Its consent is essential.
I believe that the constitutional advice-and-consent power governing the permanent appointment of high level State officials must shape and limit statutory provisions concerning the status of holdovers, especially where they are holding over after interim appointments made necessary only because the procedure for permanent appointments could not be invoked. To allow statutory provisions on the holdover of interim appointees to take precedence over the Constitutional plan and to thwart specific statutory requirements relating to permanent appointments would distort and undermine the constitutionally protected advice-and-consent power.
Public Officers Law § 5 provides for holding over after the expiration of a term until one of two events happens: either the office is abolished or a successor is chosen and qualified; but its text does not suggest that these are the only events that can terminate a holdover.
The constitutional design to give the Senate a meaningful role in the selection of men and women to serve in high public office will be better served, I believe, by having the Senate's action in regard to an appointment take precedence over a holdover's title to continue in office. Any other interpretation would "frustrate and subvert" the clear and unmistakable intent and purpose of the constitutional provision (Pfingst v. State, 57 A.D.2d 163, 165-66).
Conclusion
In brief, my conclusions are as follows:
1. The interim appointees whose nominations have not been acted upon by the Senate may validly serve and remain on the State payroll after January 23.
2. The Senate's action on January 3 had no legal effect.
3. The Senate's disapproval of the nomination of any interim appointee will terminate his or her holdover status, effective on the date of disapproval.
* Unless a successor has been sooner appointed and qualified.
** "Recess appointments" is a misnomer. In the language of Public Officers Law § 39, they are appointments made "while the Senate is not in session." The semantic confusion sparked a constitutional debate.
* I am informed that a Committee has voted to recommend the disapproval of one nominee on the ground that under the terms of the Niagara Frontier Transportation Authority Act, no vacancy exists in the office for which he was nominated. Litigation is pending.
* For purposes of this part of the discussion, the Senate is deemed not to have acted on January 3. This is considered fully below.