**Irene SHELDEN, Plaintiff–Appellant,**

v.

**BARRE BELT GRANITE EMPLOYER UNION PENSION FUND, Defendant–Appellee.**

**No. 1134, Docket 93–7941.**

United States Court of Appeals, Second Circuit.

Submitted March 4, 1994.

Decided May 19, 1994.

Samuel C. Palmisano, Barre, VT (Palmisano Associates, of counsel), for plaintiff-appellant.

Gary D. McQuesten, Barre, VT (Valsangiacomo, Detora & McQuesten, of counsel), for defendant-appellee.

Before: KEARSE and LEVAL, Circuit Judges, and GLASSER, District Judge *.

KEARSE, Circuit Judge:

Plaintiff Irene Shelden appeals from a judgment of the United States District Court for the District of Vermont, Franklin S. Billings, Jr., *Judge*, dismissing her complaint seeking a declaratory judgment under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1988), that defendant Barre Belt Granite Employer Union Pension Fund (the "Fund"), is required to pay disability pension benefits to her as the surviving spouse of Lawrence Alfred Shelden ("Shelden"). The district court granted the Fund's motion for summary judgment, ruling that the Fund's denial of benefits on the ground that application had not been made while Shelden was alive was not arbitrary and capricious. On appeal, plaintiff contends that summary judgment on

the lack-of-application ground adopted by the district court was inappropriate (a) because it was not a ground relied on by the Fund for its denial of benefits, and (b) because even as to the lack-of-application ground there were genuine issues of fact to be tried. We agree, and we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

Most of the facts are not in dispute. Prior to 1991, Shelden had worked as a stone cutter in Barre, Vermont. He was a participant in, and had some 20 years of credits in, the pension plan administered by the Fund (the "Plan"). In February 1991, Shelden was diagnosed as suffering from lung cancer. He significantly reduced his work hours, soon became totally disabled, and in April 1991 ceased working altogether. Shelden applied for short-term disability benefits and began receiving such benefits on May 1, 1991. He died on August 5, 1991, at the age of 52.

### A. *The Fund's Denial of Plaintiff's Application for Survivor Disability Pension Benefits*

After Shelden's death, plaintiff as his widow sought disability pension benefits from the Fund pursuant to §§ 3.07, 5.02, and 5.04 of the Plan. Section 3.07, entitled "Disability Pension—Eligibility," provided, in pertinent part, as follows:

A Participant may retire on a Disability Pension if he meets the following requirements:

(a) He has become totally and permanently disabled ... before age 65;

(b) He has at least 10 years of Pension Credits; and

(c) He has earned at least one Pension Credit by actual work in Covered Employment ·during the 36 month period immediately preceding his proven date of. disability, provided the Employee has become totally and permanently disabled

. . . .

---

Plan § 3.07. Sections 5.02 and 5.04 provided certain rights for the surviving spouse of a Plan participant. Plaintiff's request for survivor benefits was denied in a letter dated January 23, 1992, signed by Fund manager Dennis W. Minoli ("Fund Letter"), the text of which read, in pertinent part, as follows:

> In accordance with Barre Belt Pension Fund regulations, a participant must be disabled six months before becoming eligible for a disability pension. Since Mr. Shelden did not live six months after his date of disability, he was not eligible for a disability pension.

In April 1992, plaintiff commenced the present action seeking a declaratory judgment as to her rights under the Plan. She sought discovery from the Fund as to why the request for disability pension payments had been denied. The Fund answered that the reason was that Shelden had not satisfied the waiting period antecedent to such payments. Plaintiff's interrogatory and the Fund's sworn response were as follows:

> 3. Please state with particularity all reasons why Mr. Lawrence Alfred Shelden was denied a disability pension under the Barre Belt Granite Employer Union Pension Plan. This answer should include references to specific sections of the Pension Plan.
>
> *Response.* Mr. Shelden did not qualify for the disability pension payments pursuant to the Barre Belt Pension Fund in view of the fact that he had not met the waiting period for the payments of disability pension pursuant to Section 3.10 of the fund. Additionally, Mr. Shelden was being paid under the short term disability insurance benefit of the Granite Group Insurance Trust, which payments are designed to provide some short term benefits while Mr. Shelden met the waiting period for the commencement of the disability pension. Mr. Shelden was not alive on the seventh month of the disability, and therefore a disability pension could not begin.

(Fund's Responses to Interrogatories and Requests to Produce dated June 16, 1992, ¶ 3.) The Fund also filed the affidavit of its manager, stating as follows:

> 12. Mr. Shelden never applied directly with us for pension benefits under the Barre Belt Granite Employer Union Pension Plan during his lifetime;
>
> 13. Subsequent to his death, a request was made by the widow of Lawrence Shelden, through her attorney, for payment of disability pension benefits;
>
> 14. .... [A] disability pension ... is the only ... pension available [to Shelden] under the plan and is the benefit to which the widow of Lawrence Shelden claims entitlement;
>
> 15. .... [P]ursuant to Section 3.07, Mr. Shelden would have been eligible for a disability pension for the purpose of the Motion for Summary Judgment filed by the Defendant;
>
> 16. Section 3.10, however, establishes a waiting period for a disability pension. It states "The first monthly payment of a disability pension shall begin no sooner than the seventh month of a disability and shall continue thereafter for life so long as the pensioner remains totally and permanently disabled." Mr. Shelden was denied benefits due to the fact that he did not survive the six month waiting period;
>
> 17. The combination of the insurance plan and the pension plan is to allow someone such as Mr. Shelden 26 weeks of benefit under the insurance plan while he satisfies the waiting requirement prior to the entitlement to disability pension benefits under the pension plan;
>
> 18. Mr. Shelden himself never filed in advance a pension application with the Defendant.

(Affidavit of Dennis W. Minoli dated June 16, 1992 ("Minoli Affidavit"), ¶¶ 12–18.)

B. *The Granting of Summary Judgment*

In August 1992, plaintiff moved for summary judgment. The Fund opposed her motion and sought summary judgment in its favor, attaching copies of the Minoli Affidavit and the Plan and stating as follows:

> It is submitted that a full review of the Pension Plan, together with an application of the uncontradicted facts in this case, and an application of the law, will require a denial by this Court of the

Motion for Summary Judgment filed by the Plaintiff. Since there are no disputed facts, it is further submitted that the review of the Pension Plan, law, and undisputed facts will require this Court to grant Summary Judgment in favor of the Defendant. A Motion for Summary Judgment in favor of Defendant is attached, as well.

(Defendant's Response to Plaintiff's Motion for Summary Judgment ("Fund's Summary Judgment Response") at 1–2.) The "attached" motion consisted of a one-paragraph notice stating simply that the Fund moved for summary judgment "as no genuine issue exists with regard to any material fact, and the Defendant is entitled to Judgment as a matter of law." Although local court rules required that

> [u]pon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be t[ri]ed,

Rule 5.C., United States District Court for the District of Vermont Rules of Civil Procedure ("Local Rule 5.C."), the Fund did not attach such a statement to its cross-motion. Rather, it apparently simply relied on the arguments made in the Fund Response. To the extent pertinent here, the Fund Response argued as follows:

> It is submitted by the Defendant that, if resort is made to the plan itself, a finding in favor of the Defendants is required based upon the Affidavit of Dennis Minoli, fund manager for the Pension Fund, as well as the language of the pension fund.
>
> .... In the case at hand, Lawrence Shelden was clearly entitled to short term temporary disability benefits which is a 26 week benefit plan, which period is consistent with the waiting period for a disability pension provided in Section 3.10 of the Plan. Accordingly, Mr. Shelden was eligible for receipt of short term pension disability benefits while awaiting the required period of time prior to his entitlement to a disability pension. Unfortunately, he died prior to meeting the time period for the disability pension.
>
> Based upon the foregoing, it is respectfully submitted by the Defendant that the Plaintiff's Motion for Summary Judgment must be denied, and the Motion of the Defendant for Summary Judgment must be granted.

(Fund's Summary Judgment Response at 3–4.)

The district court referred the summary judgment motions to Magistrate Judge Jerome J. Niedermeier for a recommendation. In a Report and Recommendation dated May 20, 1993 ("Magistrate Judge's Report"), the magistrate judge recommended that plaintiff's motion be denied and that the Fund's motion be granted on the ground that "the Trustees' actions in finding that Plaintiff is not eligible to receive her husband's disability benefits *because he did not apply for benefits while he was alive* were not arbitrary and capricious." Magistrate Judge's Report at 13 (emphasis added). The magistrate judge noted that

> [s]ection 6.01 of the Plan states, "[a] pension must be applied for in writing in a form and manner prescribed by the Trustees and filed with the Trustees in advance of the first month for which benefits are payable." The language of this section is ambiguous with regard to whether application must be made by or on behalf of the covered employee during his or her lifetime, or whether the employee's beneficiary may also make the application after the employee's death. However, section 6.03 of the Plan vests the Trustees with the authority to be the sole judges of the interpretation of the Plan, and I do not find the Trustees' determination that application must be made during the employee's lifetime to be arbitrary or capricious.

Magistrate Judge's Report at 12. The magistrate judge stated that in light of his conclusion, it was unnecessary to address the validity of the waiting-period rationale: "Without an application for benefits, an employee may not receive benefits, and the propriety of imposing a waiting period is therefore irrelevant." *Id.* at 13–14.

Plaintiff objected to the Magistrate Judge's Report on the grounds (1) that the Fund had not theretofore—*i.e.*, prior to the litigation, or in discovery, or in its summary judgment motion—claimed that a reason for its denial of benefits was Shelden's failure to make application, and (2) that there was a genuine issue to be tried as to whether or not Shelden had made application while he was alive. In support of the former contention, plaintiff submitted (a) a copy of the prelitigation Fund Letter, which stated that Shelden "was not eligible for a disability pension" because he "did not live six months after his date of disability," and did not mention lack of application as a reason, and (b) the Fund's interrogatory answer which likewise relied on the waiting-period rationale and made no mention of either a lack-of-application rationale or any of the Plan sections invoked by the magistrate judge.

As to the lack-of-application ground relied on by the magistrate judge, plaintiff argued that even if that had been a reason invoked by the Fund there was sufficient evidence of an application by Shelden to create a genuine issue of fact to be tried. In support of this position, plaintiff submitted, *inter alia*, the affidavit of Shelden's long-time friend Norman Benoit, who stated that sometime between May 20 and 24, 1991, Shelden had asked him "to take [Shelden] to the union office in order to apply for disability pension. I did so that very day." (Affidavit of Norman Benoit dated June 4, 1993 ("Benoit Affidavit"), ¶ 3.) Benoit described taking Shelden to the union office on the third floor of the Merchant's Bank building in Barre:

> He and I went into the union office, where we spoke with the secretary, a woman named Debbie, about the proper manner of applying for a disability pension, as neither Mr. Shelden nor I were aware of the procedure. Debbie said to Mr. Shelden, "I'll have to introduce you to Mr. Minoli." I remained in a chair near Debbie's desk as she and Mr. Shelden walked down a short hallway, and turned a corner. Debbie came back to her desk alone, and sat down at her desk, where she remained doing work as I sat and waited for Mr. Shelden. Shortly, he returned, and said, "There, I've filed for my pension," or words to that effect. He did not say anything about the name of the person with whom he talked, or the nature of their discussion.

(*Id.* ¶ 4.)

In response to plaintiff's objection to the Magistrate Judge's Report, the Fund stated, *inter alia*, that because the Minoli affidavit had stated that Shelden had not applied for disability pension benefits prior to his death, the magistrate judge was entitled to rely on that affidavit in ruling that the denial of benefits for failure to make such application was not arbitrary or capricious. The Fund also argued that the affidavits submitted by plaintiff in support of the proposition that Shelden had made the requisite application were untimely and were not competent evidence.

By order dated August 12, 1993, the district court noted that plaintiff had objected to the magistrate judge's recommendation, but it accepted the recommendation without discussion, stating, "[a]fter *de novo* review of the matter, the Court hereby ADOPTS the Magistrate's Report and Recommendation *in toto*, on the grounds therein stated." This appeal followed.

## II. DISCUSSION

On appeal, plaintiff pursues her contentions (1) that the Fund's denial of benefits could not properly be upheld on the basis of a rationale not asserted by the Fund as its reason for the denial, and (2) that even as to the lack-of-application ground adopted by the district court, there existed an issue of fact to be tried. The Fund contends that summary judgment may be upheld either on the ground relied on by the district court or on the ground that Shelden did not meet the waiting-period requirement. For the reasons below, we conclude that summary judgment was inappropriate.

### A. The Lack-of-Application Rationale

#### 1. The District Court's Adoption of That Rationale

■ The record below clearly supports plaintiff's contention that the Fund itself did not assert the lack of an application by Shel-

den as a reason for its denial of plaintiff's request for benefits. Neither the prelitigation Fund Letter nor the Fund's interrogatory answer under oath mentioned that rationale. The interrogatory required the Fund to state "all reasons" for the denial of Shelden's disability pension benefits and to cite any section of the Plan on which the Fund relied for that denial. The only reason stated by the Fund's response was failure to meet the waiting period; and the only Plan section it mentioned was § 3.10 which dealt with the timing of payments, not § 6.01 (invoked by the magistrate judge) which dealt with application procedures.

The Fund's assertion that the Minoli Affidavit stated that Shelden had not directly applied for benefits while he was alive, though accurate, is immaterial. That affidavit did not claim that the alleged lack of application was a reason for the denial of benefits. Rather, it stated that Shelden had been "denied benefits *due to the fact that he did not survive the six month waiting period.*" (Minoli Affidavit ¶ 16 (emphasis added).)

Finally, even the Fund's motion for summary judgment did not take the position that the request for benefits had been denied because of a failure to apply. Rather, it stated that although Shelden had been eligible for benefits, "[u]nfortunately, he died prior to meeting the *time period* for the disability pension." (Fund's Summary Judgment Response at 4 (emphasis added).)

In sum, the magistrate judge's belief that the Fund had denied plaintiff's request for benefits "because [Shelden] did not apply for benefits while he was alive" was contradicted by all of the Fund's prior representations as to its reasons. Given the Fund's own representations that non-fulfillment of the waiting period was the reason for denial of benefits, the district court could not properly uphold the denial of benefits by ascribing to the Fund a different reason.

### 2. *The Existence of a Genuine Issue of Fact*

A motion for summary judgment may not properly be granted unless there is no genuine issue of material fact to be tried and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *See, e.g., Gibson v. American Broadcasting Companies, Inc.,* 892 F.2d 1128, 1132 (2d Cir.1989). The burden of showing that no genuine material factual dispute exists rests on the party seeking summary judgment. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In opposition to a properly supported motion for summary judgment, the opposing party must come forward with materials such as affidavits, documents, interrogatory answers, or other competent evidence to show that there is a genuine issue of material fact for trial. All such materials must be viewed in the light most favorable to the party opposing the motion, with all reasonable factual inferences drawn in that party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) (per curiam); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 467 (2d Cir.1989).

 Here, even if the lack-of-application rationale had been relied on by the Fund, plaintiff's submission of the Benoit affidavit should have led the district court to reject the magistrate judge's view that the Fund was entitled to summary judgment. The Fund's contention that that affidavit was not competent evidence to dispute Minoli's assertion that Shelden did not apply for benefits is wrong. It is well settled that the existence of a plan to do a given act is relevant to show that thereafter the act was in fact done, *see, e.g.,* 1A J. Wigmore, *Evidence* § 102, at 1666–67 (Tillers rev. 1983); and under a long-established exception to the hearsay rule, the existence of the plan or intention may be proven by evidence of "the *person's own statements* as to its existence," 6 J. Wigmore, *Evidence* § 1725, at 129 (Chadbourn rev. 1976) (emphasis in original); *see Mutual Life Insurance Co. v. Hillmon,* 145 U.S. 285, 294–300, 12 S.Ct. 909, 912–14, 36 L.Ed. 706 (1892); Fed.R.Evid. 803(3) (hearsay statement of declarant's then-existing intention or plan to perform a certain act is not excluded by hearsay rule). Thus, though it

may be that some parts of the Benoit affidavit, and of an affidavit of plaintiff herself, represent evidence that would not be admissible at trial, we can see no valid reason why at least testimony by Benoit that Shelden asked Benoit to take him to the Union office specifically in order to apply for disability pension benefits, along with Benoit's description of that trip, would not be admissible to show that Shelden did in fact make such an application. Any question as to whether the version of Minoli or that of Benoit should be adopted was a question to be resolved by the trier of fact after trial, not by the court on summary judgment.

■ Nor is there merit in the Fund's suggestion that plaintiff's proffer of the Benoit affidavit should be rejected as untimely because it had not been presented to the magistrate judge. The timing of the proffer was not inappropriate because, in light of (a) the Fund's failure to comply the Local Rule 5.C.'s requirement that it provide a concise statement of the material facts that it contended were not in issue, and (b) the Fund's uniform reliance on the waiting-period ground rather than a lack-of-application ground, there was no cause to believe that the question of whether or not Shelden had applied was a material issue. Plaintiff's evidence that Shelden had asked to be taken to the Fund's office for the announced purpose of applying for disability pension benefits was proffered reasonably promptly after the lack-of-application ground first surfaced in the Magistrate Judge's Report as a reason for the Fund's denial. She cannot be faulted for having failed to come forward with that evidence prior to that Report.

In sum, we conclude that the district court wrongly ascribed to the Fund a reason for the denial that the Fund had not asserted, and that as to the reason adopted by the district court there was a material issue to be tried.

B. *The Waiting–Period Rationale*

■ The Fund also argues that we should uphold the judgment on the ground that the denial of benefits for failure to satisfy the waiting-period requirement was not arbitrary and capricious. The district court, having adopted the lack-of-application rationale, chose not to address the waiting-period rationale. While we are free to affirm an appealed decision on any ground that finds support in the record, regardless of the ground on which the trial court relied, *see, e.g., Leecan v. Lopes*, 893 F.2d 1434, 1439 (2d Cir.), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990), we reject the Fund's request that we take that course here, for it is hardly clear that the record supports judgment for the Fund as a matter of law on the waiting-period issue.

■ When an ERISA-covered plan gives the trustees discretion in the granting or denial of benefits, the trustees' decision is reviewable under an arbitrary-and-capricious standard. *See generally Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). However, that standard may well be met if the trustees have, for example, "impose[d] a standard not required by the plan's provisions, or interpret[ed] the plan in a manner inconsistent with its plain words." *Miles v. New York State Teamsters Conference*, 698 F.2d 593, 599 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).

Here, § 3.07 of the Plan is entitled "Disability Pension—Eligibility." It provides that a "Participant may retire on a Disability Pension if he meets the following requirements," and only three requirements are listed: that the participant (1) became totally and permanently disabled before reaching the age of 65, (2) had at least 10 years of pension credits, and (3) earned at least one pension credit by actual work in covered employment during the 36–month period immediately preceding his proven date of disability. The Fund conceded for purposes of summary judgment that Shelden met these requirements, the only requirements specified in the section on eligibility. Yet, the Fund took the position that the waiting period was a fourth condition of eligibility. (*See, e.g.*, Fund Letter asserting that Shelden was required to "be disabled six months before becoming *eligible* for a disability pension" (emphasis added).) The waiting period provision, however, is not found in the section setting the criteria for eligibility; rather it is

found in § 3.10, which is entitled "Waiting Period for a Disability Pension" and provides that "[t]he first monthly *payment* of a Disability Pension" is not to begin sooner than the seventh month of disability. (Emphasis added.)

Plaintiff argues that § 3.10 governs only timing of the payments, not eligibility for the pension, and she contends that §§ 5.02 and 5.04 give her rights as a survivor. The Fund, relying squarely on § 3.10, argues that the availability of interim disability payments was designed to compensate for the unavailability of disability pension payments for the first six months of disability; that the disability pension was to end with the Plan participant's death; and that, therefore, no such pension would ever be payable with respect to a participant who died within six months of the onset of disability. Although the Fund denied the complaint's allegation focusing on §§ 5.02 and 5.04 of the Plan, so far as we are aware the Fund has not otherwise addressed the contention that those sections gave plaintiff survivor rights in Shelden's disability pension notwithstanding his death less than six months after he became permanently disabled.

The relationships among the eligibility provision, the waiting-period provision, and the survivor-rights provisions were not analyzed by the district court, and we decline to explore them for the first time on appeal. We leave to the district court in the first instance the resolution of all questions as to the propriety of the Fund's denial of benefits on the waiting-period ground.

## CONCLUSION

We have considered all of the Fund's arguments in support of the decision below and have found them to be unpersuasive. The judgment of the district court is vacated, and the matter is remanded for further proceedings not inconsistent with this opinion.

Costs to plaintiff.