**CORAM HEALTHCARE CORPORATION,**
Plaintiff,

v.

**WAL–MART STORES, INC. and Wal–Mart Group Health Plan Defendants.**

No. 00 Civ. 6618(LTS).

United States District Court, S.D. New York.

Nov. 18, 2002.

Abraham Wax, New York City, for Plaintiff.

Costello, Cooney & Fearon, L.L.P. by Paul G. Ferrara, Syracuse, NY, for Defendants.

## OPINION AND ORDER

SWAIN, District Judge.

Coram Healthcare Corporation ("Plaintiff") commenced this case in New York state court as a breach of contract action against Wal–Mart Stores, Inc. and Wal–Mart Group Health Plan ("Defendants"), alleging that Defendants had improperly failed to make payments to which Plaintiff was entitled under the Wal–Mart Associates' Health & Welfare Plan (the "Plan").[1] Defendants timely removed the action to this Court, asserting that the action is, on its face one pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C.A. section 1001 et seq., to recover benefits under an employee welfare benefit plan. Defendants now move for summary judgment pursuant to Federal Rules of Civil Procedure Rule 56.

This Court has jurisdiction of this action pursuant to 29 U.S.C.A. section 1132(e)(1) (West 2002) and 28 U.S.C.A. section 1331 (West 2002).

The Court has considered thoroughly all submissions and arguments related to this motion. For the following reasons, Defendants' motion for summary judgment is granted.

## BACKGROUND

The following material facts are undisputed, except as otherwise noted.[2]

Plaintiff is a corporation that provides outpatient nursing services and equipment. It is a member of a network of providers contracted to supply services in connection with the Plan. In November 1998, Plaintiff provided medical treatment and related services to Paul Pierce ("Pierce"), the value of which services Plaintiff alleges exceeds $28,573.45. (Compl.¶ 9.) The treatment consisted principally of the administration of Intravenous Immunoglobulin ("IVIG") to Pierce for his multiple sclerosis and optic neuritis. (Button Aff. ¶ 2.) This was an "off-label" use, a use other than that for which the drug has specifically been approved by the federal Food and Drug Administration ("FDA"). Pierce assigned his health benefits to Plaintiff to the extent they were assignable.

Pierce was an employee of Wal–Mart Stores, Inc. and was enrolled in the Plan. Wal–Mart Stores, Inc. sponsors and self-funds the Plan. The Plan documentation, which the parties agree is in the form of one or more Summary Plan Descriptions ("SPD"s), vests discretionary administrative and interpretive authority in the Plan Administrator. (SPD, Ex. E to Ferrara Aff., at R1.) The SPD identifies the Plan Administrator as the Administrative Committee of the Wal–Mart Associates Health Plan. (Id. at R2.) The SPD provides that

---

1. The Wal–Mart Associates' Health and Welfare Plan is also known colloquially as the "Group Health Plan."

2. Plaintiff failed to submit a Statement of Uncontested Facts pursuant to Local Rule 56.1. Although, in light of this failure, the Court is entitled to take the assertions in the Defendants' Statement of Uncontested Facts as true (see S.D.N.Y. Local Civil Rule 56.1 (2002)), the Court has reviewed thoroughly the factual proffers of both parties.

claim denial reviews will be conducted by the "Plan Administrator or a person or persons designated by the Plan Administrator" and that the Plan Administrator or its designee has "discretionary authority to resolve all questions concerning the administration, interpretation or application of the Plan." (*Id.* at R1.)

The SPD further provides that Plan "[b]enefits shall not be payable for treatment or services for ... [c]harges for drugs not approved by the Food and Drug Administration" or for "[c]harges for treatment or service that is determined by the Plan Administrator to be experimental, investigational, unnecessary, not medically necessary, and/or inappropriate for the condition...." (SPD, Ex. E to Ferrara Aff., at D9, D10.) The SPD also restricts the assignment of claims. (SPD, Ex. E to Ferrara Aff., at D14, D15). Additionally, the SPD indicates that a party may not bring a legal action in court unless the party first pursues the Plan's review process, and that a party may not bring a legal action "after the latter [sic] of two years from the filing of the claim or 45 days from the decision of the review" of a claim. (SPD, Ex. E to Ferrara Aff., at R2.)

Plaintiff submitted invoices for the IVIG treatments and related services to the Plan. A representative of the Plan investigated the use of IVIG for multiple sclerosis. (Button Aff. ¶5.) The investigation revealed that IVIG was FDA-approved for certain conditions, including primary immunodeficiency states; but it was not FDA-approved for multiple sclerosis or optic neuritis. (Burkhardt research, Ex. B to Button Aff.) The Plan also obtained other information indicating that IVIG has nonetheless been used in the treatment of multiple sclerosis. *See* Pierce claim file, Ex. A to Button Aff.; Burkhardt research, Ex. B to Button Aff.; Fax, dated Sept. 20, 1999, from Nowling to Burkhardt, Ex. E to Button Aff. The Plan denied Pierce's benefit claims and refused to pay Plaintiff's invoices, saying the procedure was not covered under the Plan. (*See* Explanations of Benefits, Ex. H to Ferrara Aff.) Upon resubmission of Pierce's claims and in response to Plaintiff's further efforts to obtain payment from the Plan, the Plan's administrative staff rejected the claims as, variously, "a duplicate to a previously processed claim" (Explanation of Benefits dated 3/25/99, Ex. J to Ferrara Aff.), for services "not covered under your plan" (Explanation of Benefits dated 5/10/99, Ex. J to Ferrara Aff.), because "benefits [are] not available for this diagnosis" (*id.*), and as not payable for the IVIG treatment

for the diagnosis of multiple sclerosis or optic neuritis. Benefits are not available due to "an exclusion of the Plan under charges not covered which state, 'Charges for drugs or equipment not approved by the Food and Drug Administration.' IVIG is not FDA approved for multiple sclerosis or optic neuritis." (Letter, dated Mar. 12, 2001, from Harral to Coram Healthcare, Ex. F to Button Aff.).

## DISCUSSION

In their initial moving papers, Defendants asserted that the Plan Administrator's decision to deny coverage for IVIG as a non-FDA-approved treatment was reasonable; that Plan benefits are not assignable, such that Defendants have no liability to Plaintiff as Pierce's assignee; that the action should be dismissed because Plaintiff and the participant failed to exhaust the administrative remedies required by the Plan and ERISA; and that Plaintiff's action is barred because it was not brought within 45 days from the decision on review of the benefit denial.

In response to the motion now before the Court, Plaintiff proffered evidence of its participation in a provider network under the Plan and of contractual provisions for benefit assignment and direct provider payment thereunder. (*See* Utilization Agreement, Ex. 5 to Wax Aff., at 2.4; Ancillary Provider Agreement, Ex. 6 to Wax Aff., at 4.1.) Plaintiff also asserted that the Plan had rejected its efforts to exhaust administrative claims procedures and, arguing that the action was timely commenced, pointed out that the Plan's limitations provision relating to the commencement of civil lawsuits provides for such commencement by the *later* of 45 days from the decision on claim review and two years after the filing of the claim. Plaintiff further contended that Defendants had waived the Plan provision relating to FDA approval by not referring to it specifically in the initial claim denials, and argued that the provision does not in any event preclude payment for the treatment because IVIG is FDA-approved for other purposes.

Defendants' response to Plaintiff's filings does not pursue the assignment, exhaustion or limitations arguments. Because, as explained below, Defendants are entitled to judgment in their favor based on the Plan interpretation rendered at the administrative level, it is unnecessary for the Court to address further the assignment, exhaustion and limitations issues, except to note that the instant action was commenced within two years after the filing of the initial claim.

*Summary Judgment Standard*

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judg-

ment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, the Court does not engage in fact-finding or weighing of credibility, but determines whether any material questions of fact are in dispute after resolving all ambiguities and drawing all justifiable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *Carlton v. Mystic Transportation Inc.,* 202 F.3d 129, 133 (2d Cir.2000). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is inappropriate. *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991).

As noted above, it is undisputed that the Plan grants the Plan Administrator discretionary authority in the application and interpretation of Plan provisions: "The Plan expressly gives the Plan Administrator or [its] ... designees discretionary authority to resolve all questions concerning the administration, interpretation, or application of the Plan." (SPD, Ex. E to Ferrara Aff., at R1.) Neither is there any dispute that the determinations at issue here were made by persons authorized by the Plan Administrator to perform such functions. Under these circumstances, the Court's review of the administrator's decision is a deferential one: A denial of benefits under an ERISA-governed plan "is to be reviewed under a *de novo* standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*

*Tire and Rubber Company v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (emphasis supplied). If the plan grants such discretionary authority to the administrator, the Court shall "not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious'" or "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995) (citations omitted). The Court is not free under these circumstances to substitute its own judgment for that of the Plan Administrator. *Id.* at 442. Thus, this Court will not overturn the Plan Administrator's determination that the IVIG treatments administered by the Plaintiff to Pierce were not covered by the Plan unless that determination was arbitrary and capricious, without reason, unsupported by substantial evidence, or erroneous as a matter of law.

### Defendants' Claim that the Treatment was Unapproved

■ The parties do not dispute that the IVIG treatment had been approved by the FDA for some uses, but not for treating multiple sclerosis or optic neuritis, the purpose for which it was used in Pierce's case. The parties disagree on the meaning of the language in SPD that indicates the Plan will not cover "[c]harges for drugs not approved by the Food and Drug Administration." (SPD, Ex. E to Ferrara Aff., at D10.) The Plan's administrative personnel interpreted this language to mean that, in order to be covered by the Plan, a drug must be approved by the FDA *for the particular use* for which coverage is sought. Defendants thus argue that IVIG in Pierce's situation was not FDA-approved within the meaning of the Plan,

because "the FDA had not approved the use of IVIG for multiple sclerosis or optic neuritis." (Def. Mem. of Law at 4.) Plaintiff, on the other hand, reads the phrase to mean that charges are excluded only for drugs that have not been approved by the FDA for any purpose whatsoever. Plaintiff argues that the Plan "clearly does not say that the drug must be approved by the FDA for the ailment in this case," (Pl. Mem. of Law at 3) and, because the FDA had approved some uses of IVIG, the drug should be covered regardless of the ailment for which it is administered.

Plaintiff is correct in noting that the terms of the plan do not explicitly exclude coverage for an FDA-approved drug that is used in an unapproved manner. However, the Plan Administrator's interpretation of this Plan exclusion is not arbitrary, capricious, or otherwise erroneous as a matter of fact or law. The exclusion is ambiguous and could logically be interpreted either way. The Plan Administrator's interpretation is reasonable considering the nature of the FDA approval regime. The FDA does not approve drugs generally, but for use with specific illnesses. "Under the federal Food, Drug & Cosmetics (FD & C) Act, a drug approved for marketing may be labeled, promoted and advertised ... for only those uses for which the drug's safety and effectiveness have been established." (Forward to Physicians' Desk Reference, Ex. 3 to Wax Aff.) [3] Considering the relational component of the FDA approval scheme, it is not arbitrary or capricious for the Plan Administrator to interpret the Plan's requirement of FDA approval in light of the structure within which the FDA makes approval determinations. Under these circumstances, and because the Plan gives the Plan Administra-

---

**3.** The Court notes, however, that the physician prescribing the IVIG treatment for Pierce was not necessarily violating the FD & C Act, as "the FD & C ACT 'does not, however, limit the manner in which a physician may use an approved drug.'" *Id.*

tor discretionary authority to interpret the terms of the Plan, the Court must give deference to the Plan Administrator's interpretation.

Plaintiff cites *I.V. Services of America v. Trustees of American Consulting Engineers,* 136 F.3d 114 (2d Cir.1998), for the proposition that a court may determine that reimbursement shall be provided for off-label uses of drugs. The court in that case, however, used a *de novo* standard in reviewing the benefit determination, as it had not been shown that the plan administrator had been given discretionary authority to make benefits determinations. *Id.* at 121. Here, the arbitrary and capricious standard of review is mandated and, under that deferential standard, the Plan Administrator's determination stands, whether or not the Court would have made the same interpretation upon a *de novo* review.

█ Plaintiff also calls the Court's attention to two cases for the proposition that an insurer's denial of a claim on one ground waives all other grounds. It argues that, because the Plan initially denied Pierce's claim on the ground that "benefits [are] not available for this diagnosis" and "this procedure is not covered by your plan," Defendants are barred from now arguing that the denial was due to the lack of FDA approval for using IVIG to treat multiple sclerosis. (Def. Mem. of Law at 7; *see also* Explanation of Benefits dated 1/29/99, Ex. H to Ferrara Aff.) Plaintiff has not demonstrated that an ERISA plan administrator's denial must be construed to waive all grounds not specifically detailed in the initial notice. The two cases noted by Plaintiff do not lend support to its position. In *McLaughlin v. Connecticut General Life Insurance Company,* 565 F.Supp. 434 (N.D.Cal.1983), the Court precluded an insurance company which had relied on specific grounds to deny a claim

from raising, in subsequent litigation, "any other grounds which a reasonable investigation would have uncovered." *Id.* at 451. That determination was based on the fact that the insurer had failed to investigate the claim adequately prior to the lawsuit, and was supported by the covenant of good faith and fair dealing, which requires an insurance company to investigate thoroughly all of the insured's claims. *Id.* In the present case there is no concern or allegation that the Plan failed thoroughly to investigate the claim for payment for the IVIG treatment provided to Pierce. Documents provided to this Court demonstrate that Plan employees investigated the approval and uses of IVIG. Plaintiff does not deny that the investigation was not insubstantial. Thus, the logic of *McLaughlin* does not apply here. In *Shelden v. Barre Belt Granite Employer Union Pension Fund,* 25 F.3d 74 (2d Cir. 1994), the other case cited by Plaintiff, the lower court's acceptance of an insurer's denial of benefits was vacated because the insurer had not raised the ground for denial on which the court had relied prior to the litigation, in discovery, or in its summary judgment motion. Instead, the ground for denial had first surfaced in the judge's opinion. *Id.* at 80. The facts of that case are markedly different from the instant case. Here, the Plan raised its ground for denial—that the drug was not FDA-approved—prior to the litigation and certainly argued it in connection with Defendants' summary judgment motion.

Because, on the undisputed facts, there is no basis for a finding that the denial of benefits in this case was arbitrary, capricious or otherwise defective under the applicable standard of review, defendants are entitled to judgment in their favor as a matter of law.

*CONCLUSION*

For the foregoing reasons, Defendant's motion for summary judgment is granted,

and judgment shall be entered in Defendant's favor, dismissing the complaint.

SO ORDERED.