Wachtler, J.
In this case, we are required to decide whether article XIII (§ 3) of our State Constitution, which limits the period an appointee may serve in a vacated elective office, applies to vacancies on community district school boards. If it does, we are required to decide whether a special election should now be directed.
Article 52-A of the Education Law established the New York City Community School District System in 1969. It provided for the continuation of the city board of education and the creation of community boards in 30 to 33 community districts. Each community board was given substantial autonomy concern *184 ing the operation of the schools within its district (Education Law, § 2590-e). The first members of the board were elected in March, 1970, for three-year term’s commencing July, 1970 and ending June 30, 1973 (Education Law, § 2590-b, subd. 2, par. [d]). The statute provides that all subsequent members shall serve for two-year terms, with elections to be held in May of odd-nu'mbered years, and terms to commence on July first. (Education Law, § 2590-c, subd. 2.)
In District No. 1, on the lower east side of Manhattan, a community board of nine persons was elected in 1970. By July of 1972, only four of the persons originally elected still held office. The other five members served by appointment of the board as it existed from time to time. Power to appoint these members was derived from the plain, but here critical language of section 2590-c (subd. 6, par. [34], cl. b) of the Education Law. The section provides that: “ Vacancies shall be filled for the unexpired term by the community board.”
The petitioners in this proceeding are would-be candidates to fill, by election, the unexpired terms of the five board members who resigned prior to July, 1972. Each petitioner attempted to file a nominating petition with the New York City Board of Elections on or before October 10, 1972, the deadline date specified by section 2590-c (subd. 6, par. [1]) of the Education Law, and each asserted a right to stand for election in November, 1972 to complete the term expiring June 30, 1973. In each case, the Board of Elections refused to accept the nominating petition because no vacancies had been declared by the City Clerk of New York City and the petitions had not been filed by August 31,1972, the deadline date for the general elections of 1972 under section 149-a (subd. 14) of the Election Law.
The petitioners now collectively urge, as they successfully urged in both courts below, that the appointive terms of the five interim members necessarily expired on December 31, 1972. They assert an irreconcilable conflict between appointment for an “unexpired term”, as authorized by section 2590-c (subd. 6, par. [34], cl. b) of the Education Law, and the constitutional mandate of article XIII (§3) which provides as follows: “ The legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the *185 commencement of the political year next succeeding the first annual election after the happening of1 the vacancy.” Article XIII (§4) of the Constitution defines a political year as beginning on the first day of January.
Special Term held the statute unconstitutional in its entirety, declared that five vacancies existed on the board effective January 1, 1973, and determined that the nominating petitions were timely filed with the Board of Elections. The court did not, however, order petitioners’ names placed on the ballot for November, 1972, because insufficient time remained for the submission of opposing petitions and because the court perceived other practical difficulties. Nor did it direct a special election at a subsequent date. The matter was left with the suggestion that the Governor might, in his discretion, direct a special election pursuant to the provision of section 42 (subd. 3) of the Public Officers Law.
Modification of the judgment by the Appellate Division consisted of (1) declaring the statute unconstitutional only to the extent that it permits appointment for a term longer than is authorized by the Constitution, and (2) holding that while the five appointees could not hold their office beyond December 31, 1972 under authority of the statute, they could continue to serve by virtue of section 5 of the Public Officers Law, which authorizes hold-over service until the election and qualification of successors. Thus, the positions would be deemed vacant only for the purpose of allowing a special election prior to the next regularly scheduled election of May, 1973. Like Special Term, however, the Appellate Division declined to direct the holding of a special election, explaining that: “ In view of the involved and detailed registration and election procedures contained in the city’s so-called Decentralization Law (see Education Law, § 2590-c), which differ materially from those which ordinarily govern general elections, we find considerable merit in respondents’ arguments that a simultaneously-held November general and school board election could prove chaotic and that periodically held -special school board elections would be unduly burdensome*. Accordingly, we believe that our decision is pragmatic *186 as well as legally sound, and we leave the matter of appropriate further relief to initiation by the Legislature or by the (Governor.”
On this appeal, the Attorney-General joins the appellants in again urging the constitutionality of section 2590-c (subd. 6, par. [34], cl. b) of the Education Law. They argue that article XIII (§ 3) of the Constitution does not apply to school board members based on an analysis of our decision and the record in Matter of Howard v. Rockefeller (15 N Y 2d 927).
In the Howard case, an Alderman of the City of Kingston resigned his office in September, 1964. The last date for filing a nominating petition to fill that vacancy occurred on September 20, 1964 and no petitions were filed. On September 30, 1964, the Mayor of Kingston made an appointment filling the vacancy for the balance of the term to December 31, 1965 in accordance with a power he held under the city charter to fill unexpired terms by appointment. At Special Term, the parties conceded that the charter provision conflicted with article XIII (§ 3) of the Constitution and that the office should be deemed vacant as of January 1, 1965. Nonetheless this court held that the appointment to December 31, 1965 was not invalid under article XIII (§3) of the State Constitution.
The Attorney-General focuses on a letter to the Governor which appears as an exhibit in the Howard record on appeal and which states that the alderman’s resignation was tendered on September 3, 1964 and accepted on September 4, 1964. If so, the vacancy occurred in time for it to be filled in the general election of 1964, and under article XIII (§ 3) no appointment could have been made for a period ending later than December 31, 1964. Since, however, we approved the appointment to December 31, 1965, the Attorney-General concludes that we intended to restrict the application of article XTTT (§3).
The argument suffers from two infirmities. First, the lower courts did not consider the date of the resignation significant, so it was not adjudicated, and the opinion by Special Term casts doubt on the accuracy of the letter exhibit. We treated the resignation as one which became effective after September 20,1964, and accordingly we held that the vacancy could be filled to the end of 1965. We did not treat the letter exhibit as having conclusively established an effective resignation prior to Septem *187 her 20, 1964, and our decision should not he so interpreted. Second, any other reading of Matter of Howard v. Rockefeller would be inconsistent with precedent, which does not allow for selective application of article XIII (§ 3) (Matter of Burke v. Cohen, 265 N. Y. 210), and would require us to formulate artificial standards of exemption.
Still, the Attorney-General argues that school board elections should be excluded from the application of1 article XIII (§ 3) and while we do not agree with the conclusion urged, the argument made in its behalf exposes a number of areas which deserve legislative attention.
School board members represent the only large body of elected officials whose terms do not coincide with the calendar year. With two exceptions (Education Law, § 2553, subd. 2), elected school board members throughout the State are chosen in May, for terms commencing shortly thereafter. For offices with terms measured by the calendar year, article XIII (§3) of the Constitution assures a person elected to complete a term that he will serve at least one year in office. That is, he will be elected in November of one year to complete a term expiring in December of the following year. On the other hand, the effect of applying article XIII (§ 3) to community school board members is that their terms will rarely exceed six months. This results from the fact that commencing May, 1973, board members will be elected for two-year terms, and every member’s term will expire at the same time (Education Law, § 2590-c, subds. 1, 2). Since it is unlikely that many vacancies will occur in the brief1 period between election in May and the cut-off date for filing petitions for the general election in November, the great majority of vacancies will have to be filled the following November, with that elected term due to expire at the end of June. Thus, those appointed will generally serve longer interim terms than those elected to replace them. This, of course, is precisely the opposite of the usual effect, and salutary purpose of applying article XIII (§ 3) to terms measured by calendar years.
Still another anomaly created by applying article XIII (§3) to May elections is that two elections may be necessary in a single year, a circumstance which does not occur for offices measured by the calendar year.
*188 The final argument urged upon this point is that the reference in article XIII (§3) to a “ political year ” commencing January 1, suggests an intent to exclude schools, which operate on a “ school year” commencing July 1, from the Constitution’s coverage. In the alternative, the argument is made that even if section 3 does apply to school boards, the expression “ first annual election after the happening of the vacancy ” has two separate meanings, that is, school elections in May of each year for school officials, and general elections in November of each year for all other officials. The short answer to all of these contentions, whether based on the structure of article XIII (§3) or otherwise, is simply that school board members are “ elective officers ” and this provision of the Constitution applies equally to all such offices. Moreover, the attempt to segregate “ first annual election ” into school elections in May and general elections in November, is simply not warranted since, among other things, the generalization that school elections always occur in May founders on the exceptions already noted in section 2553 (subd. 2) of the Education Law.
The question which next arises is whether an election should have been, or should now be, directed for the purpose of filling the five vacancies on Community Board No. 1. For this case, the answer is clear. We will not direct a special election to be held in April or May of 1973 for a term scheduled to expire at the end of June, 1973. That game is not worth the candle, particularly since regularly scheduled school board elections will presumably occur in May for two-year terms commencing in July. On the other hand, although the passage of time has made the issue academic for this litigation, in October, 1972, Special Term should have directed that an election be held to fill the vacancies in the general election of November, 1972, and if the Board of Elections could not be ready by November, then a special election should have been ordered for December. It is axiomatic under our State Constitution that when a vacancy in elective office occurs, the vacancy must be filled by election in the shortest space of time reasonably possible. (People ex rel. Weller v. Townsend, 102 N. Y. 430; Matter of MacAdams v. Cohen, 236 App. Div. 361, affd. 260 N. Y. 559; Matter of Mitchell v. Boyle, 219 N. Y. 242.) It is true that section 42 (subd. 3) of the Public Officers Law vests discretion in the Governor to call a *189 special election, but as we observed in Matter of Mitchell v. Boyle (supra, at p. 249) ‘1 this statutory qualification cannot prevail against the command of the Constitution that a vacancy * * * shall be filled by election as soon as may be, consistently with the ability to give adequate and reasonable notice to the electors.”
Finally, it is argued that a vacancy filled at an interim election would not allow for proportional representation in accordance with the intricate formula set out in section 2590-c (subd. 6) of the Education Law. We were faced with a similar contention in Matter of Ross v. Cohen (283 N. Y. 388). In that case a vacancy arose on the' Council of the City of New York in March, 1940, two months after the beginning of a two-year term. Petitioner in that case argued that if the vacancy were filled by election, the election must be conducted according to the principles of proportional representation, by which the members of the council were, at that time, elected and if the vacancy could not be filled according to the proportional representation formula, then it would be just as well to have the vacancy filled by appointment. We held that it was more important to conduct an election, and replace an appointed official with an elected official than to adhere to the fine details of proportional representation. We believe that principle is equally applicable to vacancies on community school boards.
We are aware that there may be some practical difficulties in holding a school election concurrently with a general election, and that there may be additional difficulties for community board elections that do not apply to other school elections, but it does not appear .that these difficulties could not have been overcome if Special Term had ordered an election in December. Although the affidavits are not clear, it appears that district lines for school board elections may not coincide with election district lines, the building blocks for congressional and State legislative elections; this difficulty may be overcome for community board elections under section 2590-c (subd. 2) of the Education Law. The city board of education can redraw the boundary lines of community board districts to coincide, wherever possible, with the lines for election districts.
Two other problems deserve legislative attention. (1) While nominating petitions for the 1972 general election were due by *190 August 31 (Election Law, § 149-a, subd. 14), school board election petitions were not due until October 10,1972. The Board of Elections might well require more than four weeks to prepare for school elections simultaneously with the general election; (2) while the vast majority of eligible voters in a school board election are the registered voters of the district, there are other eligibles, the parents of children who attend school within the district, whether or not the parents reside in the district, if the parents otherwise qualify. How many such voters there are and how large a problem they present is not treated in the record.
The order of the Appellate Division should be affirmed.
Chief Judge Euld and Judges Burke, Jasek, Gabrielli and Jokes concur; Judge Breitel taking no part.
Order affirmed, without costs.

 On argument of this appeal before the Appellate Division, the point was made that although this ease concerns only five vacancies, in fact at least 70 vacancies have occurred since July, 1970 on the city’s 31 boards.