OPINION OF THE COURT
Martin Rodell, J.
In an article 78 proceeding the petitioner requested this court to review and annul a determination made by the Chancellor of the New York City School District and affirmed by the Board of Education of the City of New York.
The determination sought to be annulled was reflected in an order issued by the Chancellor, wherein and whereby the members of the Community School District No. 29, Queens County, were directed to take immediate steps to close the annex in Public School (P.S.) 138, and effective September, 1980 to return its student population to the main building of Intermediate School (I.S.) 231.
A recital of the events which anteceded this application might more clearly focus the issues which this court is called upon to determine.
*12 During the 1976-1977 school year the petitioner, faced with the overutilization of I.S. 231, commenced a reorganization of the intermediate schools within the Rosedale section of the community and created an annex to said school to be physically located in P.S. 138. This annex was to be limited to accommodate seventh and eighth grade students within the service areas of P.S. 38, P.S. 138 and P.S. 195. The formation was approved by Dr. Irving Anker, the Chancellor of the New York City School District. His approval was continued for the 1978-1979 school year.
In October, 1979 the petitioner determined to discontinue the annex at the conclusion of the 1980-1981 school year, to reconstitute P.S. 38, P.S. 138 and P.S. 195 as K-7 schools and thereafter convert them into K-8 schools. The local board reserved to itself the option to maintain the status quo pending approval of the plan by the Chancellor.
In January, 1980 a revised plan was submitted to the Chancellor for his consideration. Under said revised plan the annex would be discontinued and I.S. 231 would initiate a science magnet program for children residing outside of the zone of I.S. 231 who demonstrated an interest and proficiency in science. A new intermediate school would be created by converting P.S. 38, with a feeder pattern designed to assure that the racial composition of the school would approximate 50% white and 50% minority.
In March of 1980 the petitioner formally adopted such proposal by a vote of 5 in favor; 2 opposed; and 2 absent. The plan as adopted complied with the procedural requirements of special circular 108, which relates to zoning procedure as issued by the board of education. By letter dated May 30, 1980 the Chancellor refused to approve the creation of I.S. 38 in the zone of I.S. 231. An appeal from said order was made to the New York City Board of Education wherein the Chancellor was affirmed.
On June 11,1980 the Chancellor instructed the superintendent of District No. 29 to take immediate steps to implement plans to close the annex at P.S. 138 and return its student population to the main building at I.S. 231. On June 16, 1980, by reason of the local board’s failure to *13 comply with the said directive, the Chancellor superseded the petitioner and appointed Edward P. Aquilone as trustee in charge of said community school.
The petitioner has advanced a number of contentions upon which it predicated its request for adjudication that the acts of the Chancellor are arbitrary and capricious. The first contention is that the implementation of the Chancellor’s directive would disintegrate the community; trigger the desertion of the school by the white students; and exacerbate tensions presently prevailing in the community. While the stability of the community and the amelioration of community tensions are to be fostered, it cannot take precedence in an educational administrative decision over the clearly important public policy to promote integrated education, and therefore this contention is rejected.
The petitioner advanced the contention that the Chancellor’s directive is arbitrary in that he acted without the scope of the authority vested in him. The petitioner alleges that the plan advanced by the local school board came within the purview of the rules and standards set by the board of education, and that the Chancellor had accepted said plan adopted by the majority of the local school board, but conditioned such acceptance upon the approval of any minority member of said board. The Chancellor had agreed that the plan was educationally sound and feasible, but that the overriding criteria for his rejection was the absence of the approval of any minority member. Thus the petitioner concludes that the Chancellor has vested veto power in one minority member of the board and in so doing has unlawfully abrogated his authority.
At the trial the Chancellor conceded that his rejection was primarily motivated by the absence of any minority vote of approval. He testified that armed with one minority vote, he would have accepted the plan and promoted it to the Federal Office of Civil Rights which had previously found disfavor with said plan. The Chancellor also testified that a primary motivation in his rejection of the plan was the disapproval of the Federal Office of Civil Rights.
It would appear that the disapproval of the Office of Civil Rights was not just the paramount but the sole source of *14 inducing the Chancellor to issue the directive which is the subject of this application. This conclusion is predicated upon an analysis of the plan submitted by the local school board and the plan which the Chancellor now requires to be implemented. If the Chancellor’s directive is implemented the main building of I.S. 231 would be inordinately overcrowded. The school building is presently populated by approximately 1,100 students. After implementation this number will be increased to 1,506. The physical capacity of said building is 1,244.
Both the Chancellor and the president of the board of education conceded that such overcrowding would be contrary to good and accepted educational principles. Under the rejected plan the population of I.S. 231, however, would remain the same or possibly would be depleted by the transfer of pupils to other schools. Upon the implementation of the Chancellor’s directive, I.S. 231 would be the only intermediate school in the City of New York which would have “end-to-end” sessions. Thus, pre-high school age children would be required to attend double sessions beginning as early as 7:30 in the morning and ending as late as 5:00 in the evening. Implicit in the board’s history of excluding any intermediate schools in the city from having “end-to-end” sessions is an educational determination that such sessions are injurious to the welfare and well-being of young children and represent an undue interference with the right of the children to receive after school religious instruction. Thus, I.S. 231 would be required to assume a unique and onerous burden which the central board has not seen fit to place upon any other school in the City of New York.
Again, the witness, Dr. Macchiorola, conceded “end-to-end” sessions for children below high school level is not in conformance with good and accepted educational standards. Under the plan submitted by the local board, pupils will attend regular sessions which are compatible with children of such age.
The court can appreciate the Chancellor’s efforts to obtain the approval of the Office of Civil Rights in view of the power of that agency to withhold funds from new programs. The obtaining of such funds by the Chancellor is an educational *15 responsibility which he is charged to exercise by law. (Education Law, § 2590-i.) The issue of whether funds may or may not be withheld is not before this court. That issue is now pending before a Federal Administrative Law Judge. The court wishes to point out that no determination has been made by the Federal Government with reference to withholding the funds. However, no Federal funds have been withheld at this time and a directive based upon a mere assumption or possibility would be premature and unwarranted.
It is not for the court to invade the Chancellor’s domain and determine the efficacy of the new plan which has been barred. The only issue presented to the court is whether the order of the Chancellor in directing the closing of the annex and the transfer of pupils to I.S. 231 is arbitrary and capricious. The court finds that the directive is not predicated upon any sound or accepted educational principle. It was a directive predicated solely upon the wishes of the Office of Civil Rights. Responsibility rests upon the Chancellor to present a plan which is buttressed by fundamental and accepted educational procedures and not to present a hastily drawn plan which is unsound from an educational viewpoint.
It is well settled that the powers of the community school board are limited to matters relating to the community school district. (Matter of Roher v Dinkins, 32 NY2d 180.)
The community board has the general power to determine matters relating to the students within the district. However, such may not be exercised inconsistently with the policies established by the city board. (Education Law, § 2590-e; Community School Bd. Dist. No. 22 v Board of Educ., 44 AD2d 713.)
The court may not direct the Chancellor to accept the plan as submitted by the local school board. His rejection was compatible with his authority and responsibility to enforce the established city policy of insuring racial integration among the students of the various local community school boards. It is evident that the plan would contribute to the continued isolation of I.S. 231, which has been violative of the city’s integration policy. The Chancellor did not exceed *16 the authority vested in him by section 2590-1 of the Education Law in rejecting said plan.
This court cannot evaluate the matters of petitioner’s disagreement with the educational assumptions relied upon by the Chancellor. (Matter of Vetere v Allen, 15 NY2d 259.)
While it is possible to question the educational wisdom of the Chancellor’s solution to a problem, it is not for the courts to do so. The courts may not under the guise of enforcing a vague educational public policy, suggested to it by the petitioner, assume the exercise of educational policy vested by the Constitution and statute in school administrative agencies. This is not to say that there may never be gross violations of defined public policy which the courts should be obliged to recognize and correct. (Matter of New York City School Bds. Assn, v Board of Educ., 39 NY2d 111.)
In this case, the court is not presuming to dispute the exercise of educational policy in behalf of the Chancellor. The court does, however, find the Chancellor’s actions arbitrary in the plan which he seeks to impose upon the local school board. Patently, it is a plan hastily drawn and poorly conceived, which is violative not only of the central board’s own rules and regulations but concededly violative of any accepted educational precept.
The court finds the Chancellor’s actions arbitrary in that they were predicated upon precepts and criteria extraneous to the educational needs of the district. The obligation that rests upon the Chancellor to the children of District No. 29 goes beyond that. The children of District No. 29 are deserving of something better.
As noted earlier, the Chancellor properly rejected the district’s plan for failure to comply with the city’s integration policy. However, the Chancellor erred in considering that policy to the exclusion of all other valid educational criteria. Accordingly, the Chancellor’s order is vacated and annulled and the matter is remitted to the Chancellor for the purpose of adopting a new zoning plan for I.S. 231 and its annex.